## Sanford, et al. v. Lewis, et al.

(Decided December 17, 1915.)

### Appeal from Muhlenberg Circuit Court.

1. Ejectment—Title—Judicial Proceedings—Regularity—Evidence.— In an action of ejectment, certain judicial proceedings under which plaintiff acquired title examined and held to show that an infant born after the death of the decedent, whose land was sold, was the only heir of the decedent, and a guardian ad litem having been appointed to defend for him and having filed his report, the infant was properly before the court under the law prevailing at the time the proceeding was had.

2. Ejectment—Title—Judicial Sales—Sufficiency to Pass Title.—In an action of ejectment, certain judicial proceedings had prior to the adoption of the present Code, through which plaintiff claimed title, examined, and held to show that under the law then in force the court had jurisdiction of the subject matter

and of the parties, and that the judgment, when followed by a proper deed, was sufficient to vest title in the purchaser.

3. Judicial Sales—Commissioner's Deed—Approval by Court—When Shown.—Under the law existing prior to the adoption of the Civil Code, an order showing that a commissioner's deed was produced in open court and acknowledged by him, and then certified to the proper office for record, is sufficient to show the court's approval of the deed.

4. Estoppel—Evidence.—In an action of ejectment, evidence examined and held not sufficiently clear and convincing to sustain the plea that plaintiff was estopped from asserting title to the land by reason of his representations and conduct, by which defendants' grantors were induced to patent the land and make valuable improvements thereon.

5. Limitation of Actions—Section 2513, Kentucky Statutes—Void Patents.—The seven-year statute of limitations provided for in Section 2513, Kentucky Statutes, does not apply to or protect an occupant under a void patent, as the claimant under such a patent has no title deducible from the Commonwealth.

NEWTON BELCHER and T. J. SPARKS for appellants.

MILTON CLARK and JONSON, WICKLIFFE & JONSON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This action was originally brought by David Lewis against defendants, Dollison B. Sanford and others, to recover fifty-five acres of land situated in Muhlenberg county. During the course of the proceedings David Lewis died, after having devised all of his property to his stepson, S. F. Lewis, who was also appointed executor, and the action was thereafter revived and conducted in the name of S. F. Lewis, executor and sole devisee under the will of David Lewis, deceased. On final hearing judgment was rendered in favor of plaintiff, and defendants appeal.

The facts are these: On January 20th, 1864, by deed, which was duly acknowledged and recorded, David Lewis and Frankie Lewis, his sister, purchased from D. A. and E. W. Martin a tract of land consisting of 100 acres. They made an oral partition of the land, whereby Frankie received 45 acres and David 55 acres. Subsequently Frankie married Adam Thompson and she and her husband conveyed the 45 acre tract to defendant Dollison B. Sanford. The 55 acre tract of land which

David Lewis received in the partition is the land in controversy. Shortly after receiving the deed therefor, David moved on this tract and remained there until the year 1872. It appears that just prior to that time the Martins went into bankruptcy, and David, for some reason, conceived the idea that this action on the part of the Martins affected the validity of his deed. Thereupon he moved to another tract of land, a short distance away, and remained there until his death. In the fall of 1897, Susan R. Eades and her husband, James Eades, secured a warrant covering the 55 acres of land and proceeded to build a dwelling house and make other improvements thereon. On December 31st, 1897, a patent covering the land was issued to Susan R. Eades. Mrs. Eades and her husband lived on the land until 1899, when Mr. Eades died. Thereupon Mrs. Eades moved to her mother's home. When she moved away from the land she left a portion of her household goods in the house, and, for a part of the time at least, left Elliott Eades on the premises as her tenant. In 1902 she sold the land to Elmer Hancock. Hancock conveyed it to defendant Sanford, who in turn sold a portion of the land to L. T. Wright. Wright sold it to McClellan Kile, and Kile conveyed it to Kirkpatrick and Eaves.

Defendants insist that the judgment is erroneous because plaintiff failed to prove a good title of record from the Commonwealth, and for the further reason that the plea of estoppel and of seven years' occupancy of the land under a title deducible from the Commonwealth should have prevailed.

1. David Lewis acquired title under a patent dated December 10th, 1804, issued to Jeremiah Langley. It is conceded that all the conveyances by which David acquired title are valid and sufficient to pass title, with the exception of a deed dated July 20th, 1849, from Charles F. Wing, Commissioner, to John B. Rowland, executed pursuant to a judgment rendered in the case of Samuel Turner's Administrator v. Samuel Turner's Heirs and others. This deed is attacked on the ground that neither the record itself nor the proof shows that the infant defendant, Samuel C. Turner, was the only heir of Samuel C. Turner, deceased, and on the further ground that it was not approved by the court. We are of the opinion, however, that the petition in that action clearly shows that when Samuel C. Turner, Sr., died his

only heirs were his brothers and sisters. After his death the infant defendant, Samuel C. Turner, was born. Prior to the birth of the infant the land had been sold for the purpose of paying the debts of the decedent. As a matter of fact, the debts exceeded the value of the land sold. Because of the birth of the infant, the action was brought to confirm the sale. A guardian *ad litem,* who filed a report, was appointed to defend for the infant. The commissioner of the court was directed to investigate and report to the court whether or not the price at which the land had been sold was a good price for the land. After investigating the matter and going upon the land itself, he reported in favor of the sale. Thereupon the court confirmed the sale and directed the commissioner to make deed. The deed was made and produced in open court and acknowledged by the commissioner, and then certified to the proper office for record. All these proceedings took place prior to the adoption of the present Code. We think it clear, under the law then prevailing, that the court had jurisdiction of the subject matter and all the parties to the action, including the infant defendant, and that the order of confirmation of the sale, when followed by a proper deed, was sufficient to vest title in the purchaser. Irvine v. Walker, 3 Ky. Law Rep., 473. While the court's order does not expressly show that the deed was approved by the court, yet the order does show that the deed was produced by the commissioner and acknowledged in open court, and was thereupon ordered to be certified to the proper office for record. As it will be presumed that the court did its duty and approved the deed before ordering it for record, we conclude that the order itself is sufficient, under the law then prevailing, to show that the deed was approved. It follows that the deed was sufficient to pass title.

2.   The plea of estoppel is based on the following evidence: Mrs. Eades, now Mrs. Crabtree, says that before she had the land surveyed and patented her husband quizzed David Lewis about it, telling him that he did not want to take it up if anyone else claimed it. David said that all he knew was that his mother had once lived there. Mr. Eades then asked David about his right. David said he didn't have any right whatever. If he did he didn't know it, and he would rather Mr. and Mrs. Eades would take it up than that it should be

left out so long. He also said he would be glad for Mr. and Mrs. Eades to take it up. Thereupon they had the land surveyed, procured a warrant and erected a house and other improvements on the land. Subsequently they procured a patent. On the contrary, David Lewis testified that Joe Martin, one of his grantors, said that the land had to be sold at a bankrupt sale, and if he didn't pay for it again he would be put out. He thought that when Martin sold it again "that it disfigured my deed and knocked it in the head some way." He then moved off the land, but lived nearby it. He did not learn his deed was good until his stepson came back from the army. The first he knew of the claim of the Eades was when they got a deed from the governor. Jim Eades said that he had as good a deed from the governor as he wanted. David asked him how he came to get it, and Eades said he inquired from the neighborhood who owned it, and not being able to find any owner he just wrote to the governor for a deed and got it. David then told him that he had gotten a deed to the land once and paid for it. He never told Mr. and Mrs. Eades that the land had laid out so long that he would be glad for them to take it up. Mrs. Eades never told him before she got the deed from the governor that she was going to take the land. It is unnecessary to determine whether or not the facts relied on would, if true, constitute an estoppel. Certainly the evidence itself in such a case should be clear and convincing. As it is, Mrs. Eades testifies one way and David Lewis another. Under the circumstances, it cannot be said that the evidence is so clear and convincing as to justify the conclusion that the trial court erred in rejecting the plea of estoppel.

3. The record shows that the land in question was originally patented in the year 1804. The patent under which defendants claim was not issued until the year 1897. The land having been previously surveyed and patented, the patent issued to Mrs. Eades was void. The seven-year statute of limitation provided for in section 2513, Kentucky Statutes, does not apply to or protect an occupant under a void patent, as the claimant under such a patent has no title deducible from the Commonwealth. Caughlin v. Wilson, 167 Ky., 35. It follows that the alleged seven years' occupancy under the patent of 1897 by Mrs. Eades conferred no title.

Judgment affirmed.